N.Y.S.D. Case #
08-cr-0365(SAS)

12-1487-cr
*United States v. Bout*

## In the
# United States Court of Appeals
## For the Second Circuit

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:  _____
DATE FILED: September 27, 2013

————

No. 12-1487-cr

————

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

VIKTOR BOUT, also known as VICTOR ANATOLIYEVICH BOUT, also
known as VIKTOR BULAKIN, also known as VIKTOR BUTT, also known
as VADIM MARKOVICH AMINOV, also known as VIKTOR BUDD, also
known as VICTOR BUT, also known as BORIS,
*Defendant-Appellant.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 08-CR-365-1 — Shira A. Scheindlin, *Judge.*

————

ARGUED: AUGUST 22, 2013
DECIDED: SEPTEMBER 27, 2013

————

Before: CABRANES, HALL, and CHIN, *Circuit Judges.*

————

CERTIFIED COPY ISSUED ON 09/27/2013

Defendant-appellant Viktor Bout, a reputed international arms trafficker, was arrested following an innovative international sting operation directed by American law-enforcement agents across three continents. Following lengthy proceedings abroad, Bout was extradited to stand trial in the United States. He was convicted, following a jury trial in the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*), of: (1) conspiracy to kill United States nationals, in violation of 18 U.S.C. § 2332(b); (2) conspiracy to kill United States officers and employees, in violation of 18 U.S.C. §§ 1114 and 1117; (3) conspiracy to acquire and export a missile system designed to destroy aircraft, in violation of 18 U.S.C. § 2332g; and (4) conspiracy to provide material support or resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B.

On appeal, Bout raises a number of claims, including that: (1) the government's conduct constituted an outrageous or vindictive prosecution in violation of his constitutional right to due process of law; (2) his extradition was illegal because it was the consequence of "intense, coercive political pressure exerted by the United States"; (3) his prosecution violated the "doctrine of specialty"; and (4) the indictment insufficiently stated the offenses listed in Counts One and Two.

We find no merit to any of defendant's claims, and, accordingly, we **AFFIRM** the judgment of conviction of the District Court and **REMAND** the cause for the limited purpose of correcting a clerical error in the judgment.

3                                                     No. 12-1487-cr

————

ALBERT Y. DAYAN, Law Office of Albert Y. Dayan, Kew Gardens, NY, *for Appellant Viktor Bout.*

ANJAN SAHNI, Assistant United States Attorney (Brendan R. McGuire, Michael A. Levy, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee United States of America.*

————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant Viktor Bout, a reputed international arms trafficker, was arrested following an innovative international sting operation directed by American law-enforcement agents across three continents. Following lengthy proceedings abroad, Bout was extradited to stand trial in the United States. He was convicted, following a jury trial in the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*), of: (1) conspiracy to kill United States nationals, in violation of 18 U.S.C. § 2332(b); (2) conspiracy to kill United States officers and employees, in violation of 18 U.S.C. §§ 1114 and 1117; (3) conspiracy to acquire and export a missile system designed to destroy aircraft, in violation of 18 U.S.C. § 2332g[1]; and (4) conspiracy to provide material support

---

[1] The April 16, 2012 judgment of conviction entered by the District Court mistakenly identified Count Three as a violation of 18 U.S.C. § 2332, rather than 18 U.S.C. § 2332g. Accordingly, we remand the cause for the limited purpose of correcting this clerical error.

or resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B.

On appeal, Bout raises a number of claims, including that: (1) the government's conduct constituted an outrageous or vindictive prosecution in violation of his constitutional right to due process of law; (2) his extradition was illegal because it was the consequence of "intense, coercive political pressure exerted by the United States"; (3) his prosecution violated the "doctrine of specialty"; and (4) the indictment insufficiently stated the offenses listed in Counts One and Two.

We find no merit to any of defendant's claims, and, accordingly, we affirm the judgment of conviction of the District Court and remand the cause for the limited purpose of correcting a clerical error in the judgment.

## I. BACKGROUND

Bout has long been regarded by the United States government as a dangerous and powerful international arms trafficker, and his illicit arms pipeline has repeatedly been designated for sanctions by United States and United Nations authorities. The Drug Enforcement Administration ("DEA") initiated an international sting operation against Bout in late 2007 with the assistance of three confidential sources ("CSs"). Two of the CSs posed as representatives of the *Fuerzas Armadas Revolucionarias de Colombia* (the "FARC"), a Colombian entity and longtime revolutionary organization seeking the violent overthrow of the Colombian government. The FARC, which has been designated by the United States government as a foreign terrorist organization, is also one of the world's largest cocaine suppliers and has directed violent acts toward American personnel and property.

On January 10 and 11, 2008, the three CSs met with Andrew Smulian, a former colleague of Bout, on the island of Curaçao, in the Caribbean, to discuss the possibility of a multimillion-dollar weapons transaction supposedly in order to aid the FARC in its fight against the Colombian government and the United States. Following the meetings in Curaçao, Smulian visited Bout in Moscow, where they discussed the weapons order in greater detail. Bout then directed Smulian to meet the CSs to continue discussions, which later occurred over a period of two weeks in Romania. Smulian, on behalf of Bout,[2] told the CSs that 100 surface-to-air ("SAM") missiles were available immediately, and that Bout could provide additional equipment and advice if needed.

On March 5, 2008, Bout met with Smulian and the three CSs about the weapons deal at a hotel in Bangkok, Thailand. During recorded conversations, Bout repeatedly supported the FARC's intention to use his weapons to kill American pilots stationed in Colombia.[3] On March 6, 2008, Thai authorities arrested both Bout and Smulian in Bangkok. Less than a month later, while Bout was still in Thailand, a grand jury sitting in the Southern District of New York returned an indictment against him. In August 2009, a lower court in Thailand denied Bout's extradition to the United States, but that decision was reversed by an appellate court in August 2010.

Bout was extradited to the United States on November 16, 2010, and his trial began on October 11, 2011. After a three-week

---

[2] Romanian authorities intercepted Bout's phone calls and text messages communicating with Smulian during these negotiations.

[3] Bout's specific commitments to the FARC included: (1) 700-800 SAMs; (2) 20,000 to 30,000 AK-47s; (3) 5 tons of C4 explosives; (4) ZU-23 anti-aircraft cannons; (5) night-vision equipped sniper rifles; (6) land mines; (7) ultralight aircraft outfitted with grenade launchers; and (8) unmanned aerial vehicles.

6                                                    No. 12-1487-cr

trial, the jury found Bout guilty on all four counts of the indictment, and on April 5, 2012, Judge Scheindlin sentenced him to concurrent terms of 180 months' imprisonment on Counts One, Two, and Four and 300 months' imprisonment on Count Three.

This timely appeal followed.

## II. DISCUSSION

On appeal, Bout raises a number of claims, including that: (1) the government's conduct constituted an outrageous or vindictive prosecution in violation of his constitutional right to due process of law, and that therefore the District Court should have granted his motion to dismiss the indictment; (2) his extradition was illegal because it was the impermissible consequence of "intense, coercive political pressure exerted by the United States"; (3) his prosecution violated the "doctrine of specialty"; and (4) the indictment returned against him insufficiently stated the offenses listed in Counts One and Two.[4] In analyzing the denial of Bout's motion to dismiss the indictment, we review the District Court's conclusions of law *de novo* and its factual findings for clear error. *See United States v. Daley*, 702 F.3d 96, 99-100 (2d Cir. 2012). We consider each of Bout's claims in turn.

## A.

Bout argues that "[t]he egregious government[ ] action here is *sui generis*, taking the concepts of entrapment, vindictive prosecution

---

[4] Bout also argues that the District Court's jury instructions allowed him to be "convicted of a crime that does not exist," and that the government failed to prove jurisdiction on Count Three. We find no merit in these claims, and, substantially for the reasons stated by the District Court in its denial of Bout's post-trial motions brought on the same grounds, we reject them in full. *See* App'x 65-74.

and selective prosecution to a cumulative higher order and can only be described as 'outrageous.'" Appellant's Br. 23. "[A]n indictment will be dismissed if there is a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999). To demonstrate an actual vindictive motive,[5] "the defendant must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) the defendant *would not have been prosecuted except for the animus*." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (internal quotation marks and alteration omitted) (emphasis supplied).

The Supreme Court has also recognized the possibility that "outrageous" government conduct could bar a criminal conviction. *See Hampton v. United States*, 425 U.S. 484, 489 (1976). To prevail on such a claim, however, a defendant must show that the government's conduct is "so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction." *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997) (internal quotation marks omitted). In other words, the government's conduct must "'shock the conscience' in the sense contemplated by [the Supreme Court in] *Rochin v. California*, 342 U.S. 165, 172 (1952) (forced stomach pumping)." *United States v. Cromitie*, --- F.3d ----, No. 11-2763(L), 2013 WL 4487543, at *18 (2d Cir. Aug. 22, 2013). As we have explained:

---

[5] Bout does not appear to base his claim on a presumption of vindictiveness, nor could he do so, inasmuch as was have "consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) (internal quotation marks omitted).

> Generally, to be 'outrageous,' the government's involvement in a crime must involve either coercion or a violation of the defendant's person. It does not suffice to show that the government created the opportunity for the offense, even if the government's ploy is elaborate and the engagement with the defendant is extensive. Likewise, feigned friendship, cash inducement, and coaching in how to commit the crime do not constitute outrageous conduct.

*United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011) (citations omitted). Indeed, "as with all sting operations, government creation of the opportunity to commit an offense, even to the point of supplying defendants with materials essential to commit crimes, does not exceed due process limits." *Cromitie*, 2013 WL 4487543, at *19; *see also Schmidt*, 105 F.3d at 91-92 (holding that "elaborate" and "extensive" government sting operation in which a law enforcement agent "posed as a hit man" and "federal agents actually conducted a controlled [prison] breakout" did not constitute outrageous government conduct*); cf. United States v. Ming He*, 94 F.3d 782, 792 (2d Cir. 1996) (noting that a federal court's "supervisory power over DEA conduct in a sting operation is 'extremely limited'" (internal quotation marks and citation omitted)).

Having reviewed the record in light of these principles, we conclude that Bout's allegations do not meet the high threshold necessary to prevail on a vindictive prosecution claim. Bout refers to media reports stating that former Deputy National Security Advisor Juan Zarate and other high-ranking officials at the Drug Enforcement Agency (DEA) had him in their "cross-hairs." Appellant's Br. 24. Even if true, these allegations do not constitute the type of "animus" that is relevant within the meaning of our cases on vindictive prosecution. The "animus" that is prohibited typically

occurs in situations where "a prosecutor's charging decision is a direct and unjustifiable penalty that resulted solely from the defendant's exercise of a protected legal right." *United States v. Stewart*, 590 F.3d 93, 123 (2d Cir. 2009) (alteration omitted). In this case, however, the government's motivation to prosecute Bout stemmed from widespread concern that he was engaged in criminal conduct, as evidenced by his placement on numerous United States and United Nations "sanctions lists" since the early 2000s. The government's enthusiastic or energetic pursuit of Bout, a high-priority criminal target, does not demonstrate vindictive, or even inappropriate, government conduct. *See United States v. Sanders*, 211 F.3d 711, 718 (2d Cir. 2000) (holding that an "aggressive investigation" in response to a "potential [criminal] violation . . . cannot give rise to an inference of impropriety").

Similarly, Bout has not alleged anything akin to "either coercion or a violation of [his] person," *Al Kassar*, 660 F.3d at 121, which would be necessary, at a minimum, to prevail on an outrageous government conduct charge. Indeed, Bout's allegations amount to claims that international sting operations of foreign citizens are *de facto* coercive. These arguments are squarely foreclosed by our decision in *Al Kassar*, itself an international sting operation case. As we explained in that case, "[w]hile the sting operation in this case was elaborate and prolonged, there was no coercion or physical force, and nothing done was outrageous or a shock to the conscience." *Id.* at 122. Accordingly, we find no merit to Bout's claims of vindictive prosecution or outrageous government conduct.

## B.

Bout also argues that his extradition from Thailand was the consequence of "intense, coercive political pressure exerted by the

United States," supposedly rendering his prosecution improper under some general principle of the law governing extradition. Specifically, Bout argues that because 18 U.S.C. § 3184 permits courts to evaluate the legality of the extradition of a defendant by our government from the United States to another country, courts should take on the reciprocal responsibility of evaluating the legality of the extradition of a defendant by a foreign government to the United States.

We disagree. We have squarely held that "although courts of the United States have authority to determine whether an offense is an extraditable crime when deciding whether an accused should be extradited from the United States, . . . our courts cannot second-guess another country's grant of extradition to the United States." *United States v. Campbell*, 300 F.3d 202, 209 (2d Cir. 2002) (citation omitted); *id.* ("It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request.").[6]

Likewise, under the so-called *Ker-Frisbie* doctrine, "the government's power to prosecute a defendant is not impaired by the illegality of the method by which it acquires control over him." *United States v. Toscanino*, 500 F.2d 267, 271 (2d Cir. 1974) (relying on *Ker v. Illinois*, 119 U.S. 436 (1886), and *Frisbie* v. *Collins*, 342 U.S. 519 (1952)); *see also United States v. Getto*, --- F.3d ----, No. 11-1237-cr, 2013 WL 4779622, at *4 & n.8 (2d Cir. Sept. 9, 2013). Accordingly, we find

---

[6] To the extent that Bout claims that the United States violated its extradition treaty with Thailand, the government informs us that Thailand has not claimed any violation of the treaty. Appellee's Br. 21 n.5; *see generally United States v. Reed*, 639 F.2d 896, 902 (2d Cir. 1981) ("[A]bsent protest or objection by the offended sovereign, [a defendant] has no standing to raise the violation of international law as an issue.").

no merit to Bout's claim that his indictment should have been dismissed because he was improperly extradited to the United States.

## C.

Bout further argues that his prosecution violated the "doctrine of specialty," which "prohibits prosecution of a defendant for a crime other than the crime for which he has been extradited." *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) (relying on *United States v. Alvarez-Machain*, 504 U.S. 655, 659 (1992)). Bout contends that the Thai appellate court that extradited him to the United States did so in the belief that he had tried to sell arms to actual members of the FARC, rather than to CSs posing as such as part of a sting operation. The District Court found this argument "completely controverted" by the record of the proceedings in Thailand, and we agree. A review of the record discloses that the Thai court was aware that Bout was caught in a sting operation, rather than a conspiracy with actual FARC buyers. Accordingly, Bout's claim lacks any factual basis in the record.

## D.

Finally, Bout claims that the indictment returned against him insufficiently stated the offenses listed in Counts One and Two. Bout argues that these counts of the indictment, which charged him with a conspiracy to commit murder, were defective because they only specified that he conspired to "kill" and "the words *murder*, *malice aforethought*, *premeditation* or any other terms describing the object crime of the charged conspiracy as *murder* are conspicuously absent." Appellant's Br. 38.

It bears recalling that "we have consistently upheld indictments that do little more than to track the language of the

statute charged and state the time and place (*in approximate terms*) of the alleged crime." *United States v. Pirro*, 212 F.3d 86, 100 (2d Cir. 2000) (internal quotation marks omitted) (emphasis supplied). Indeed, "in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002). Rather, "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted).

Here, there is no doubt that the allegations in the indictment make it sufficiently clear that the crimes charged were for conspiracy to commit *murder*. In any event, Bout has not suggested any arguable prejudice. *See United States v. Stringer*, --- F.3d ----, No. 12-608-CR (L), 2013 WL 5183526, at *4 (2d Cir. Sept. 17, 2013) ("When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity." (internal quotation marks omitted)).

## CONCLUSION

To summarize:

(1)   In the absence of actual animus or shocking conduct akin to coercion or a violation of defendant's person, an international sting operation of the kind undertaken in

this case does not constitute either vindictive prosecution or outrageous government conduct.

(2)     Government application of "coercive political pressure" on a foreign government to secure a defendant's extradition does not render that defendant's prosecution improper.

(3)     The District Court correctly rejected defendant's claim that his prosecution violated the doctrine of specialty.

(4)     The indictment sufficiently charged defendant with conspiracy to murder United States nationals and conspiracy to murder United States officers and employees, notwithstanding that the indictment did not refer explicitly to "murder."

Accordingly, we **AFFIRM** the District Court's April 9, 2012 judgment of conviction and **REMAND** the cause for the limited purpose of correcting a clerical error in the judgment.[7]

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

---

[7] *See* note 1, *ante.*